UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

DAVOUD GHATANFARD,

                                      Debtor.
----------------------------------------------------------------x

DAVOUD GHATANFARD,

                                      Appellant,                    **OPINION & ORDER**

     – against –                                  No. 24-CV-2858 (CS)

PAVLE ZIVKOVIC,

                                      Appellee.

----------------------------------------------------------------x

<u>Appearances</u>:

Anne Penachio
Penachio Malara, LLP
White Plains, New York
*Counsel for Appellant*

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
Joseph & Kirschenbaum LLP
New York, New York
*Counsel for Appellee*

Yann Geron
Nicole N. Santucci
Geron Legal Advisors LLC
*Attorneys for* Amicus Curiae *Yann Geron as Chapter 7 Trustee*

Seibel, J.

Before the Court is the appeal of Debtor/Appellant Davoud Ghatanfard from an April 11, 2024 Order, (App'x at 673-675 (the "Apr. 11 Order")),[1] entered by Judge Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York, in the Chapter 11 Subchapter V bankruptcy proceeding captioned *In re Davoud Ghatanfard a/k/a David Ghatanfard*, No. 23-BK-22840 (Bankr. S.D.N.Y.). The April 11 Order, upon the motion of Appellee Pavle Zivkovic, converted Debtor's Chapter 11 case to a Chapter 7 case pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code.

For the following reasons, the bankruptcy court's order is affirmed.

I.  **BACKGROUND**

A.  **District and Circuit Court Cases**

Debtor is a restauranteur who has owned and managed various restaurants, including Laura Christy Midtown LLC (operating as Valbella Midtown) and Valbella Meatpacking, for over 40 years. (App'x at 17-18.)[2] Appellee Pavle Zivkovic is the lead plaintiff in a class action lawsuit for violation of federal and state labor laws pending in the United States District Court for the Southern District of New York captioned *Zivkovic v. Laura Christy LLC et al.*, No. 17-CV-553. On June 22, 2022, pursuant to a jury verdict, judgment was entered in favor of the class on the labor law claims against Laura Christy LLC, Laura Christy Midtown LLC and Debtor jointly and severally in the aggregate amount of $5,092,017.85, and in favor of Zivkovic on his

---

[1] Citations to "App'x" refer to the Appendix provided with Appellant's Brief at ECF Nos. 9-1 through 9-10. Citations to "ECF No." refer to entries on the District Court's docket, No. 24-CV-2858. Citations to "Bankr. Dkt. No." refer to entries on the Bankruptcy Court's docket, No. 23-BK-22840.

[2] In 2021 and 2018 respectively, Valbella Midtown and Valbella Meatpacking ceased operations. (App'x at 18.)

2

discrimination claim against Debtor in the amount of $202,500.  (No. 17-CV-553 (S.D.N.Y.), ECF No. 324 ("Judgment") at 3; *see id.* ECF No. 283 (Verdict Form).)

On July 19, 2022, Debtor (and his co-defendants) appealed the Judgment to the United States Court of Appeals for the Second Circuit, (App'x at 858-861), arguing (among other things) that the district court abused its discretion in exercising supplemental jurisdiction over the plaintiffs' New York Labor Law ("NYLL") claims, (*see id.* at 564, 567).  On March 5, 2024, in a *per curiam* decision, the Second Circuit remanded the matter to the district court to clarify the status of the plaintiffs' federal labor claims because, although the parties had agreed prior to trial to submit only the NYLL claims to the jury, the federal claims were never formally dismissed, and the partial final judgment did not contain a disposition as to them.  (*See id.* at 562-69.)  On May 6, 2024, the district court issued an order clarifying the partial judgment, granting the plaintiffs' motion for conditional dismissal of their still-pending federal claims, and indicating that it did not think that dismissal of the federal claims would deprive it of subject matter jurisdiction in light of the parties' stipulation to try only the NYLL claims.  (*See* No. 17-CV-553 (S.D.N.Y.), ECF No. 560 (Order).)  The matter remains pending before the Second Circuit.  (*See generally Zivkovic v. Laura Christy LLC*, No. 22-1558 (2d Cir.).)

### B. Debtor's Conveyances

In the meantime, in their post-judgment collection efforts the class members discovered that Debtor had rendered himself insolvent through various transactions with his real property and ownership shares in several LLCs, and through fraudulent conveyances to Rosey Kalayjian, Debtor's "life partner," with whom Debtor lives and shares a bank account, and who has worked in several restaurants owned by Debtor.  (App'x at 336-37.)  Specifically, the class members discovered that: (1) between September 2020 and June 2022, Debtor transferred to Kalayjian

$1.2 million from the sale of a home owned solely by Debtor, $675,000 he had received from Laura Christy Midtown LLC, $600,000 from the sale of another restaurant, and $1.4 million from the refinance of a home he solely owned in Southampton, New York; (2) in May 2022, Debtor recorded a deed transferring title to the Southampton home from his sole ownership to himself and Kalayjian in a joint tenancy with right of survivorship; and (3) on June 16, 2022 (after the verdict and days before the Judgment was entered), Debtor transferred to Kalayjian 90% of his ownership in a company called Oak Grove Road LLC that owns a 50% stake in the restaurant Valbella at the Park. (*See id.* at 337.) On July 5, 2023, the district court issued an order temporarily restraining Kalayjian from transferring funds or assets outside of the ordinary course, and at an attachment hearing on October 25, 2023, granted an attachment and extended the terms of the temporary restraining order, noting the suspicious nature of the activity between Debtor and Kalayjian, including that Debtor still lived in the Southampton property and enjoyed the funds he transferred to Kalayjian by using her credit card for personal expenses. (*Id.* at 338-39.) At the court's direction, the parties met and conferred about the scope of discovery necessary to effectuate attachment and/or seek avoidance, and after reaching an impasse, the parties asked the court for a conference, which the district court scheduled for November 14, 2023. (*Id.* at 339.)

### C. The Bankruptcy Case

On November 13, 2023, Debtor filed a voluntary Chapter 11 Subchapter V bankruptcy petition. (*Id.* at 1.) He estimated his assets at less than $50,000, (Bankr. Dkt. No. 1 at 6), and his liabilities as almost $6 million, (*id*. at 9-10). Yann Geron was appointed as the Subchapter V Trustee, (App'x at 2), and on February 12, 2024, Debtor filed his plan of reorganization, (*id.* at 13-33), in which he proposed to fund the plan with $1700 in monthly payments and $500,000 to

4

be obtained from Kalayjian in settlement of claims to avoid the transfers made to her. On March 5, 2024, the class creditors filed a motion to convert the Chapter 11 case to a Chapter 7 case, superseded by a motion for the same filed on March 8, 2024. (*Id.* at 48-82.)[3] The class creditors argued, among other things, that Debtor was litigating the case in bad faith in that he had misrepresented his assets and liabilities and had proposed to settle $6.7 million in fraudulent transfer claims for $500,000. (*Id.* at 68-80.) Also on March 25, 2024, Debtor filed a motion pursuant to Bankruptcy Rule 9019 seeking approval of the $500,000 settlement between himself and Kalayjian to resolve the fraudulent conveyance claims. (*See id.* at 541-57.) On March 26, 2024, Debtor opposed the motion to convert the case. (*See id.* at 570-594.)

On April 4, 2024, the bankruptcy court held oral argument on the class creditors' motion to convert the case from Chapter 11 to Chapter 7. (*See id.* at 723-99 ("Apr. 4 Tr.").) Counsel for Zivkovic, in advocating for the motion, noted that Debtor had a profound conflict of interest with his life partner Kalayjian and that Debtor had filed the bankruptcy right after the district court attached Kalayjian to the case and when Debtor knew the court was about to start voiding the transfers to her. (*Id.* at 10:1-11:4.) The Subchapter V Trustee opined that given the conflicts, the only paths forward were conversion of the case, the appointment of a fiduciary in the Chapter 11 case, or expanded powers for the Subchapter V Trustee. (*See id.* at 11:13-13:18.) Debtor's counsel acknowledged the conflict and agreed to expanded powers for the Subchapter V Trustee to allow him to "take over the entire litigation and causes of action," (*id.* at 13:23-15:22), arguing that that path would enhance recovery and serve the best interests of the parties, (*see id.* at 16:25-17:5, 19:1-12). The court found that Debtor had "a huge conflict" that related to "central issues" in the case, (*id.* at 29:23-25), but questioned whether a Subchapter V trustee could have the same

---

[3] It is not apparent from the bankruptcy court docket why a superseding motion was filed.

5

powers as a Chapter 7 or Chapter 11 trustee and whether he could authorize a Subchapter V trustee to pursue only the fraudulent transfer issues, (*id*. at 16:19-24, 17:18-18:2, 20:6-12), noted the "serious trust issues" raised by Debtor's conduct, (*id*. at 17:12-14), suggested that the creditors might consent to expanding the trustee's powers, (*id*. at 21:22-25, 30:7-25), and decided to adjourn the hearing to give the parties time to discuss the options and attempt to reach a consensus on the best path forward, (*see id.* at 23:23-24:5, 32:13-15).

The parties reconvened on April 10, 2024.  (*See* App'x at 800-57 ("Apr. 10 Tr.").) Debtor's counsel advocated for expansion of the Subchapter V Trustee's power, (*id*. at 9:22-10:7), while counsel for Zivkovic contended that there was no statutory or case law authority for giving a Subchapter V trustee the authority to pursue avoidance actions against third parties, (*id.* at 12:1-24).  The Subchapter V Trustee concurred that based on his research, his duties could only be expanded to include investigative powers and reporting to the court, not the power to prosecute claims or administer assets.  (*Id.* at 16:4-19.)  The court expressed its disappointment that the creditors would not consent to giving the trustee the power to pursue avoidance actions, saying that "the course of action being pushed by the judgment creditors is unwise," "myopic," and "reflects a lack of understanding about how Subchapter V works" because it "can yield great benefits to creditors as opposed to Chapter 7." (*Id.* at 22:6-23:2).  The court noted, however, that there is "too much fundamental mistrust of the Debtor" for the creditors to be willing to consent to having the Subchapter V Trustee step into the shoes of the Debtor, and that he could not under the statute order that relief absent consent.  (*Id.* at 23:2-24:6.)  The court concluded that expanding the trustee's powers just to allow investigation and report would be a half-measure and cause needless delay, and therefore the remaining option was to convert the case to Chapter 7.  (*See id.* at 27:4-13; 30:19-25; *see also id.* at 24:1-6.)  The court explained that there was clear

6

cause for conversion in light of the "irreconcilable conflict of interest," (*id.* at 27:14-21), and the need for a trustee with "the full slate of powers" to investigate and act, (*id.* at 30:21-25). On April 11, 2024, the court entered an order converting the case, stating that it had "found cause for dismissal or conversion under Section 1112(b) of the Bankruptcy Code, including the Debtor's conflict of interest in pursuing potential fraudulent transfer claims and other claims of the estate" and that "given the Movant's opposition to expanding the powers of the Subchapter V Trustee, the Court . . . concluded that conversion to Chapter 7 is the appropriate remedy for all the reasons stated on the record." (*See* Apr. 11 Order at 1-2.)

Upon Debtor's oral request at the hearing, the court stayed the conversion order until April 19, 2024, subject to the Debtor filing a notice of appeal and a motion for a stay pending appeal in this Court. (*Id.* at 2-3.) After Debtor informed the bankruptcy court that he had filed a notice of appeal on April 12, 2024 but could not seek a stay pending appeal until the district court clerk assigned a docket number, the bankruptcy court on April 15, 2024 directed that any such a motion be filed within 24 hours of the receipt of a docket number, and extended the stay for seven days following the timely filing of the motion. (App'x at 694, 709-11.) Debtor did not file a motion for stay in this Court. (*See* ECF No. 7.) On April 29, 2024, Geron was appointed as the Chapter 7 Trustee for Debtor's estate. (Bankr. Dkt. No. 81).

## II.   DISCUSSION

### A.   Standing

Appellee argues that Debtor's appeal should be dismissed for lack of standing because a Chapter 7 trustee has been appointed during the pendency of this appeal, and Debtor has not demonstrated that he is a person aggrieved by the bankruptcy court's order. (ECF No. 14 ("Appellee's Opp.") at 12.) Debtor argues that he is such a person aggrieved because he has

7

stage IV metastatic cancer, has been denied the opportunity to confirm his Subchapter V plan, and is "effectively forced to spend what could be his final days as a debtor in Chapter 7 and in litigation involving not only himself but his longtime partner, Kalayjian." (ECF No. 16 at 5-6.)

"Standing is a threshold question in every federal case that determines the power of the court to hear the suit." *In re Osborne*, No. 13-CV-8211, 2014 WL 2738558, at *3 (S.D.N.Y. June 17, 2014), *aff'd*, 594 F. App'x 34 (2d Cir. 2015) (summary order).[4] "In addition to the requirements imposed by Article III of the Constitution, an appellant in a bankruptcy case must be a person aggrieved – a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *Id.* "The burden to establish standing remains with the party claiming that standing exists." *In re Osborne*, 594 F. App'x at 34. The question of who can prosecute an appeal of an order converting a case from Chapter 11 to Chapter 7 is not a question of Article III standing but rather "concerns authority under the Bankruptcy Code to litigate an appeal and related matters on behalf of the debtor following the appointment of a Chapter 7 trustee." *In re 461 7th Ave. Mkt., Inc.*, No. 20-3555, 2021 WL 5917775, at *1 (2d Cir. Dec. 15, 2021).

"Upon conversion to Chapter 7 bankruptcy and the appointment of a trustee, a bankruptcy estate is created." *Quest Ventures, Ltd. v. IPA Mgmt. IV, LLC*, No. 17-CV-4026, 2018 WL 922145, at *1 (E.D.N.Y. Feb. 15, 2018). "The general rule is that, unlike creditors, Chapter 7 debtors lack standing to object to or appeal from orders of the bankruptcy court because the commencement of liquidation proceeding extinguishes any pecuniary interests that they formerly held in the property of the estate." *Licata v. Coan*, No. 14-CV-1754, 2015 WL

---

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

8

9699304, at *5 (D. Conn. Sept. 22, 2015), *aff'd sub nom. In re Licata*, 659 F. App'x 704 (2d Cir. 2016) (summary order). "Debtors generally lack standing because bankruptcy proceedings absolve the debtor of any liability to the creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee." *Id.* "The rule is based on the assumption that the success of the debtor's objection cannot affect him because the debtor receives a distribution only after all creditors have been paid in full, and an estate will rarely have enough assets to do even that." *Id.* "It is well-established that a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid that would revest in the debtor when the bankruptcy concludes." *Drake v. United States*, No. 13-CV-1136, 2014 WL 6883104, at *2 (N.D.N.Y. Dec. 4, 2014), *aff'd sub nom. Drake v. U.S. ex rel. I.R.S.*, 622 F. App'x 42 (2d Cir. 2015) (summary order); *see Babayoff v. Stevens*, No. 23-CV-252, 2024 WL 1798182, at *1 (E.D.N.Y. Apr. 25, 2024). "Consequently, a Chapter 7 debtor generally has standing to object only where there is a reasonable possibility that the value of the bankruptcy estate assets exceeds estate debts." *In re Osborne*, 594 F. App'x at 35.

      Zivkovic and the trustee rely on this line of cases to argue that Debtor lacks standing to pursue this appeal. But these authorities relate to a debtor's lack of standing to object to orders affecting the property of the estate after conversion; they do not address the situation in which the objection is to conversion of a Chapter 11 bankruptcy to a Chapter 7. Indeed, individual debtors appeal orders converting Chapter 11s to Chapter 7s with some regularity. *See, e.g., In re Carrington*, 710 F. Supp. 3d 248, 251 (S.D.N.Y. 2024), *appeal dismissed*, No. 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024); *Lynch v. Barnard*, 590 B.R. 30, 35 (E.D.N.Y. 2018), *aff'd*

*sub nom. In re Lynch*, 795 F. App'x 57 (2d Cir. 2020) (summary order); *Frumusa v. Woodard*, No. 09-CV-6436, 2009 WL 3401455, at *2 (W.D.N.Y. Oct. 19, 2009); *In re Sakon*, No. 19-21619, 2023 WL 4004302, at *2 (Bankr. D. Conn. June 14, 2023).

It is true that the management of a corporate debtor cannot pursue an appeal of a conversion order once a trustee is in place, because the trustee becomes the manager of the corporation, *see Quest Ventures, Ltd. v. IPA Mgmt. IV, LLC*, No. 17-CV-4026, 2018 WL 922145, at *1-2 (E.D.N.Y. Feb. 15, 2018) (citing *In re C.W. Mining Co.*, 636 F.3d 1257 (10th Cir. 2011)), but that rule does not apply to individual debtors, *In re C.W.*, 636 F.3d at 1266; *see In re Homesite Holdings LLC*, No. BAP SC-22-1112, 2023 WL 3918405, at *3 n.6 (B.A.P. 9th Cir. June 6, 2023). At the time Debtor filed his notice of appeal, no trustee had been appointed, and I assume for purposes of this appeal that he is pecuniarily affected by the conversion. He thus has standing to appeal the conversion order. If he were seeking to challenge a bankruptcy court order regarding the assets of the estate or the Chapter 7 trustee's administration of them, I would agree that he could not do so. And while Debtor's failure to seek of a stay from this Court to prevent the appointment of the trustee is puzzling, and might well make the unringing of that bell difficult if I were to agree with him that the conversion order was improper, I do not dismiss his appeal based on lack of standing. But for the reasons set forth below, his arguments fail on the merits.

### B. Merits

Debtor argues that the bankruptcy court committed reversible error when it converted his Subchapter V Chapter 11 case to a Chapter 7 case because the court had alternative avenues to deal with the conflict of interest but chose conversion, which the court had deemed "unwise" and "myopic;" declined to expand the Subchapter V Trustee's powers because Zivkovic would not

consent; failed to consider the factors in 11 U.S.C. § 1112(b)(2); and declined to consider the conflicts among Zivkovic as lead plaintiff, Zivkovic as an individual, and his law firm as creditor, and their failure to file a Verified Statement under Bankruptcy Rule 2019. (Appellant's Br. at 15.)

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017) (summary order). "A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error." *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021).

"[A]n order converting a bankruptcy case for cause is reviewed for an abuse of discretion." *In re Blaise*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998). "This means that the Court does not consider whether it would have made the same decision, but merely whether the Bankruptcy Court's decision was reasonable." *Schneorson v. Schneorson*, No. 22-CV-2434, 2023 WL 4490392, at *4 (E.D.N.Y. July 12, 2023). "A bankruptcy court exceeds its allowable discretion where its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Miles v. Chase Bank*, No. 20-CV-4748, 2022 WL 842073, at *1 (E.D.N.Y. Jan. 24, 2022). "In reviewing the bankruptcy court's determinations, this Court may

rely upon any ground supported by the record – it need not rely solely upon those relied upon by the Bankruptcy Court." *Amelio v. Piazza*, No. 19-CV-5944, 2020 WL 5535241, at *3 (S.D.N.Y. Sept. 15, 2020).

### 1.     Cause for Conversion

A court may dismiss a Chapter 11 case or convert a Chapter 11 case to a Chapter 7 case "for cause." 11 U.S.C. § 1112(b)(1); *see In re JJ Arch LLC*, No. 24-10381, 2024 WL 4472047, at *12 (Bankr. S.D.N.Y. Oct. 11, 2024) ("A court must convert or dismiss a bankruptcy where cause exists so long as conversion or dismissal is in the best interest of both the creditors and the estate."). "Section 1112(b)(4) of the Bankruptcy Code provides a number of examples of 'cause'" but "that list is not exhaustive and courts are free to consider other factors." *In re JJ Arch LLC*, 2024 WL 4472047, at *12; *see In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive."). "Once cause for relief is shown, the Bankruptcy Court has broad discretion to either convert or dismiss the Chapter 11 case." *In re 461 7th Ave. Mkt., Inc.*, No. 20-CV-6216, 2022 WL 836789, at *2 (S.D.N.Y. Mar. 21, 2022). "Although this discretion is not completely unfettered, the Bankruptcy Court is not required to give exhaustive reasons for its decision." *Id.* "Once the movant establishes that 'cause' exists, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." *In re JJ Arch LLC*, 2024 WL 4472047, at *12.

The bankruptcy court determined that there "clearly is cause for conversion or dismissal here in the irreconcilable conflict of interest in terms of assessing where various assets had gone and whether they were appropriately transferred from [Debtor] to other parties," (Apr. 10 Tr. at

12

27:17-21), and that conversion to Chapter 7 would allow for a Chapter 7 trustee with "both the ability to investigate and the ability to act," (*see id.* at 31:5-6).  While conflict of interest is not listed among the delineated "causes" in 11 U.S.C. § 1112(b)(4), courts have determined that cause is established where the debtor in possession has a conflict of interest.  *See In re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019) (listing conflicts of interest as example of non-enumerated misconduct found to constitute cause); *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (conversion to Chapter 7 case "particularly appropriate . . . given the extraordinary conflicts of interest"); *In re Duling Sons, Inc.*, 650 B.R. 578, 581 (Bankr. D.S.D. 2023) ("Courts have frequently identified other factors that support a finding of cause under §§ 1112(b)(1) or 1185(a) including where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims of the estate.") (collecting cases); *In re No Rust Rebar, Inc.*, 641 B.R. 412, 425 (Bankr. S.D. Fla. 2022) ("Where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers or other claims that may benefit the estate, conversion is appropriate.").  That Debtor apparently transferred substantial assets to his life partner during the underlying litigation, and that Debtor obviously was not going to vigorously pursue claims that what he and his partner did was fraudulent or otherwise voidable in bankruptcy, plainly created a significant conflict of interest in allowing him to control the extent to which return of those assets for the benefit of his creditors would be sought.

Thus, the bankruptcy court adequately articulated cause to convert the case, and Debtor's argument that the court committed reversible error because it did not list one of the factors enumerated in Section 1112(b)(4) fails. (*See* Appellant's Br. at 18.)

Debtor also argues that *In re Duling Sons*, 650 B.R. 578, which the court cited for the proposition that conflicts of interest constitute cause for conversion, (Apr. 11 Order at 2), is distinguishable because in that case, upon considering the best interests of the estate and creditors, the court decided not to convert but instead to expand the Subchapter V trustee's powers. (*See* Appellant's Br. at 18-20.) But that another judge, in another case involving different circumstances, chose a different option hardly makes it an abuse of discretion for Judge Lane to have chosen conversion. Debtor makes much of the fact that the court characterized Zivkovic's advocacy of conversion as "unwise" and "myopic," given the benefits of remaining in Subchapter V, (Apr. 10 Tr. at 22:6-15), but – as discussed further below – Judge Lane also concluded that the expansion of the trustee's powers that he could authorize without consent would not suffice in the circumstances here, and his decision to convert thus was reasonable.

    **2.**    **Exceptions to Conversion**

Pursuant to 11 U.S.C. § 1112(b)(2), even if a court identifies cause, "the Court may deny a motion to convert or dismiss if (i) it finds and specifically identifies 'unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate' and (ii) the debtor or any other party in interest establishes that the requirements of 11 U.S.C. § 1112(b)(2)(A) and (B) have been met." *In re Adamo*, No. 14-73640, 2016 WL 859349, at *9 (Bankr. E.D.N.Y. Mar. 4, 2016) (quoting 11 U.S.C. § 1112(b)(2)).[5] Once cause is established, it

---

[5] Under 11 U.S.C. § 1112(b)(2)(A) and (B), the debtor or any other party in interest must establish that:

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

14

is the debtor's burden to "demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." *In re JJ Arch LLC*, 2024 WL 4472047, at *12. "The bankruptcy court has broad discretion to determine whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate." *Andover Covered Bridge, LLC*, 553 B.R. 162, 172 (B.A.P. 1st Cir. 2016). "The Code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most chapter 11 cases." *In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010). "Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." *Id.*

Debtor argues that there were unusual circumstances such that the case should not have been converted, including that the appeal before the Second Circuit has been expedited and could result in the Judgment being vacated, the Debtor has serious health issues, and the Debtor's case is a Subchapter V case with a Subchapter V trustee.[6] (Appellant's Br. at 22.) Debtor fails to explain, however, why these factors are unusual and warrant exceptions, and case and statutory law support that these factors do not defeat conversion. *See In re BH S & B Holdings, LLC*, 439 B.R. 342, 350 (Bankr. S.D.N.Y. 2010) ("[C]ase law is clear that the mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert."); *In re Carrington*, 710 F. Supp. 3d at 259 (bankruptcy court did not abuse discretion in finding there

---

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

[6] The Debtor also asserts that the Class Firm's failure to file a Verified Statement under Rule 2019 constituted an unusual circumstance. This argument is addressed in section II.B.4 below.

15

were no unusual circumstances although debtor asserted she was emotionally, physically, and financially exhausted, and such exhaustion supported debtor's inability to fulfill duties under Chapter 11); 11 U.S.C.A. § 1183 (Subchapter V trustee is appointed in every Subchapter V case).

Moreover, even if these circumstances were unusual, Debtor fails to carry his burden under 11 U.S.C. § 1112(b)(2). (Appellant's Br. at 22-23.) As Appellee asserts, (Appellee's Opp. at 22), in light of the impediments resulting from the conflict of interest, Debtor has not shown there is a reasonable likelihood that a plan would be confirmed within a reasonable amount of time. Debtor's argument that there was reasonable justification for any problematic acts or omissions and that he is committed to curing them, (Appellant's Br. at 22-23), is wholly conclusory, and falls far short of showing that conversion is not in the best interests of the creditors and the estate. To the contrary, as the bankruptcy court reasoned, (Apr. 10 Tr. at 30:19-31:6), and as further discussed below, the situation was sufficiently serious that it required a trustee with the power not only to investigate but to take action to address the transfers.

Debtor's argument that unusual circumstances rendered that decision an abuse of discretion fails.

### 3. Expansion of the Subchapter V Trustee's Powers

Debtor also argues that the bankruptcy court committed reversible error when it chose to convert the case rather than expand the Subchapter V Trustee's powers. As discussed, however, because the court identified adequate cause for conversion and therefore had the discretion to determine the remedy, it was not required to expand the Subchapter V Trustee's powers. Moreover, Judge Lane made a reasonable decision that the expansion that he was statutorily authorized to order would only have allowed the trustee to investigate and report, but would not

16

have allowed the trustee to do what was necessary, which was to bring avoidance actions against Kalayjian.  Pursuant to 11 U.S.C §§ 1183 (a) and (b), a subchapter V trustee acts as a fiduciary for creditors, facilitates the debtor's small business reorganization, and monitors the debtor's consummation of its plan of organization.  *See In re Ventura*, 615 B.R. 1, 13 (Bankr. E.D.N.Y. 2020), *order rev'd on other grounds, appeal dismissed sub nom. Gregory Funding v. Ventura*, 638 B.R. 499 (E.D.N.Y. 2022); *In re Turkey Leg Hut & Co. LLC*, 659 B.R. 539, 543-44 (Bankr. S.D. Tex. 2024).  "Under section 1183(b)(2) of the Bankruptcy Code, the Court may 'for cause and on request of a party in interest, the trustee, or the United States trustee' order that a Subchapter V Trustee's powers are expanded to include the powers specified in sections 1106(a)(3) and (4)," *In re Corinthian Commc'ns, Inc.*, 642 B.R. 224, 233 (Bankr. S.D.N.Y. 2022) (quoting 11 U.S.C. § 1183(b)(2)), which are to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan" and file a statement of investigation, 11 U.S.C. §§ 1106(a)(3) and (4).

Judge Lane concluded that to empower a Subchapter V trustee to pursue matters not authorized by statute, over the objection of a creditor, would inject uncertainty and risk complications later on.  (*See* Apr. 10 Tr. at 29:21-31:17; *see* Apr. 4 Tr. at 22:1-23:22.)  Debtor points to *In re Corinthian Commc'ns*, 642 B.R. 224 (Bankr. S.D.N.Y. 2022), in which the court expanded the powers of the Subchapter V trustee to investigate the affairs of the debtor and report to the bankruptcy court, and *In re Mallett, Inc.*, No. 21-11619, 2024 WL 150628 (Bankr. S.D.N.Y. Jan. 12, 2024), which granted a trustee's Rule 9019 motion to approve settlement, to argue that the court should have expanded the Trustee's powers here. (Appellant's Br. at 25-27.)  But *In re Corinthian Commc'ns* involved only expansion for investigation and reporting, not for

bringing avoidance actions, and *In re Mallett, Inc.* did not address expansion of powers or indicate that anybody objected to expansion. Debtor provides no authority for the proposition that a Subchapter V trustee can be empowered to pursue avoidance actions, and the only case to which any party points holds to the contrary. In *In re Turkey Leg Hut & Co. LLC*, the bankruptcy court, after considering the rights and powers of a debtor in possession as enumerated in 11 U.S.C. § 1184, which include the right to pursue avoidance actions, and the general duties of a Subchapter V trustee as described in 11 U.S.C. § 1183, determined that "[n]one of the subchapter V trustee's general duties authorize the Subchapter V Trustee to pursue claims belonging to the estate, [or] on behalf of the estate." 659 B.R. at 542-44.

Debtor has failed to show that the bankruptcy court abused its discretion in determining that it did not have the authority, over the objection of a creditor, to expand the Subchapter V Trustee's powers to include litigation of the fraudulent conveyance claims on behalf of the estate.

### 4. Rule 2019

Lastly, Debtor argues that the bankruptcy court committed reversible error when it failed to consider Appellee's conflicts of interest and failure to file a Verified Statement under Federal Rule of Bankruptcy Procedure 2019. That rule requires that, in a Chapter 9 or 11 case, every group, entity or committee consisting of or representing multiple creditors or equity security holders must file a verified statement containing certain information enumerated in Fed. R. Bankr. P. 2019(c).

Judge Lane made clear that he had read all the papers, (Apr. 4 Tr. at 8:22-9:1), and thus he can be presumed to have considered all the arguments.[7] In any event, he did not abuse his discretion in proceeding in the absence of Rule 2019 statements. Rule 2019(c)(2)(B) requires that creditors disclose "the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed." Fed. R. Bankr. P. 2019(c)(2)(B). Debtor argues that neither Appellee nor Appellee's law firm filed a Rule 2019 statement, which "would likely clarify that there are inherent conflicts among Zivkovic in his capacity as an individual creditor, the Class and the Class firm." (Appellant's Br. at 31.) Appellee responds that the proofs of claim filed on behalf of Zivkovic individually and as a class representative contained all the information required to be disclosed, and where, as here, a class has been certified, the class certification itself satisfies the requirements of Rule 2019. (Appellee's Opp. at 32-34.) Indeed, the Seventh Circuit and the Eleventh Circuit have held that "certifying the class satisfies Rule 2019" even where (unlike here) the class had not been certified at the time of the bankruptcy filing, *In re Spring Ford Indus., Inc.*, No. 02-15015, 2004 WL 231010, at *2 (Bankr. E.D. Pa. Jan. 20, 2004) (first citing *Matter of Am. Rsrv. Corp.*, 840 F.2d 487, 493 n.6 (7th Cir. 1988); then citing *In re Charter Co.*,

---

[7] Moreover, Debtor did not argue that the alleged failures to comply with Rule 2019 had any substantive impact on the conversion motion, but rather argued that decision on that motion should be deferred until the statements were filed. (App'x at 584 ¶ 39.) That request was based on speculation, absent any articulated factual basis, that counsel was laboring under a conflict of interest in pursuing avoidance of the $6.7 million transfers, rather than settlement with Kalayjian, because counsel was interested in maximizing its ability to recover its legal fees, which were 1/3 of the Judgment. (*Id.* ¶¶ 36-38.) Debtor did not explain, however, how maximizing the recovery would be harmful to the class or to Zivkovic. Because it seems plain that counsel holding a 1/3 interest in its clients' recovery would have every incentive to maximize the recovery of its clients, and that therefore the interests of clients and counsel were aligned, it is unsurprising that Judge Lane did not find the issue worthy of discussion.

876 F.2d 866, 873 (11th Cir. 1989)), and the Court finds those cases persuasive.  Debtor's argument fails.

### III.   CONCLUSION

For the foregoing reasons, the bankruptcy court's order is affirmed.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: November 7, 2024
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.